WILLIAM DAVIS, Jr. *vs.* PROPRIETORS OF THE SECOND UNIVER-
SALIST MEETING-HOUSE IN LOWELL.

A statute, incorporating certain persons by the name of the Proprietors of a Meeting-
house in L., conferred on them the powers, and subjected them to the restric-
tions, &c. set forth in the Rev. Sts. *c.* 44, and also authorized them to hold prop-
erty, the yearly income of which, exclusive of their meeting-house, should not
exceed $1500, and to divide their whole capital stock into shares : There was also
a provision in the statute, that when the dividends upon such shares should have
paid all assessments thereon, with interest, the income of their property should
be exclusively applied to parochial purposes: The corporation passed a by-law,
that the price of each share should be $25, and that if any person should elect
to pay into the treasury, in addition to this sum, the further sum of $3, he should
be entitled to a certificate, with the word "redeemable" written thereon, which
certificate should not be assignable, but should entitle the holder to have the same
redeemable out of the corporation fund, whenever he should leave L. and take
up a permanent residence elsewhere : D. subscribed for four shares; paid $112
into the treasury ; took a redeemable certificate under seal, and afterwards took up
his permanent residence in another State ; demanded of the corporation a redemption
of his certificate; and on their refusal to redeem it, brought an action of assump-
sit against them to recover back $100. *Held,* that the corporation had authority to
make the by-law; that the by-law and D.'s subscription constituted a binding con-
tract between the parties; and that D. was entitled to recover back $100, in an
action of indebitatus assumpsit.

ASSUMPSIT on the money counts, and upon the following cer-
tificate : " (L. S.) Second Universalist Meeting-house. Shares
No. 178, 179, 180, 181 — one hundred dollars. Be it known
that William Davis, jr. of Lowell is the proprietor of four shares
in the capital stock of the Proprietors of the Second Universal-
ist Meeting-house in Lowell, subject to the rules and regulations
of said corporation, which shares are redeemable, and the holder
thereof, by leaving the city of Lowell, and taking up a perma-
nent residence elsewhere, may at any time after the expiration
of one year from the 7th day of April, A. D. 1838, assign and
surrender said shares to said corporation, and, upon such sur-
render and assignment, shall be entitled to receive, from the
said corporation, the sum of one hundred dollars. Witness the
seal and signature of the president and clerk of said corporation,
this nineteenth day of August, A. D. 1841.

" Jacob Turner, Clerk. J. S. French, President."

The case was submitted to the court of common pleas on the
following agreed statement : The defendants are a corporation

establisned by *St.* 1838, *c.* 22, "with all the powers and privi leges, and subject to the restrictions, duties and liabilities set forth in the 44th chapter of the revised statutes." The second section of said statute is in these words: "Said corporation may hold real and personal estate, the annual income of which, exclusive of their meeting-house, shall not exceed the sum of fifteen hundred dollars; and said corporation may divide their whole capital stock into shares not less than one hundred, nor more than eight hundred, in number; *provided,* that no share shall ever be assessed in a larger sum in the whole than twenty-five dollars; *provided also,* that when the dividends upon such shares shall have paid the amount of all assessments made upon them, with six per cent. interest upon said amount, from the time of payment, the income of said property shall thereafter be applied exclusively to parochial purposes." Under this act of incorporation, the defendants were regularly organized on the 7th of April 1838. The notice of their first meeting was duly given, and stated the purposes thereof to be, "to see if said proprietors will accept of their act of incorporation, and organize themselves as a corporation, by the choice of a clerk and such other officers as they may think necessary: To see if said proprietors will purchase a lot of land on Lowell Street, containing 8000 feet, more or less, of the Locks and Canal Company: To choose a committee to frame and report a code of by-laws for said corporation." Under the said notice calling the first meeting aforesaid, the defendants adopted the following as one of their by-laws: "Article 13th. The price of each share shall be twenty five dollars; and if any person shall elect to pay into the treasury, in addition to this sum, the further sum of three dollars, he shall be entitled to receive a certificate, with the word 'redeemable' written thereon, at the time of making, in large and intelligible characters; which certificate shall not be assignable in any event whatever, but shall entitle the holder to have the same redeemable out of the corporation fund, whenever he shall leave the city of Lowell, and take up a permanent residence elsewhere; *provided,* not more than $25 shall ever be paid in the redemption of any one

share." Under this by-law, adopted on the notice aforesaid, the certificate set forth (as above) in the plaintiff's declaration was issued to the plaintiff, he paying therefor $3 on each share, over and above the $25 per share.

Before the commencement of this action, the plaintiff removed to Rhode Island, and took up his permanent residence in that State, and then demanded of the defendants to redeem the said four shares in the capital stock of said corporation, which they refused to do. No demand was made for the repayment of the $3 paid on each share, over and above the par value.

The by-law above recited is the only vote of the corporation authorizing the redemption of its stock by the corporation.

Upon the foregoing facts, the court of common pleas rendered judgment for the defendants, and the plaintiff appealed to this court.

*Knowles & Beard*, for the plaintiff. The facts show a contract between the plaintiff and defendants, which the defendants, by their charter, were authorized to make. Their object and intention were to build a meeting-house, and their charter authorized them to divide their capital stock into shares. But in order to obtain subscribers, it became necessary, from the fluctuation of population in Lowell, to make a provision to induce those who might remove from the city, and reside permanently elsewhere, to subscribe for stock. Hence the adoption of the by-law in question. As this by-law provides that the certificate of redeemable stock shall not be assignable, if the plaintiff cannot maintain this action, he can derive no benefit from his stock.

The payment of three dollars extra on a share, and the prohibition of a transfer of the certificate, formed a sufficient consideration for the certificate of stock ; and if the defendants have exceeded their powers, they cannot take advantage of that excess of power, in this action. Should there be any objection to the plaintiff's recovering on the special count, he may recover on the count for money had and received. If the defendants' whole proceedings have been wrong, yet the benefit received by them from the plaintiff's payment to them of $112 raised

an implied promise, which will sustain this action. *Bank of Columbia* v. *Patterson,* 7 Cranch, 300. *Hayden* v. *Middlesex Turnpike,* 10 Mass. 401.

The power of making by-laws, which is conferred on corporations by Rev. Sts. *c.* 44, § 2, is not confined to the particular matters there enumerated. The power of making by-laws is one of the incidents of a corporation ; and any by-laws may be valid, which are not repugnant to its charter. 1 Bl. Com. 475, 476. 1 Wooddeson, 495.

The fact, that the by-law in question was the only vote of the defendants which authorized the redemption of their stock, does not stand in the plaintiff's way. Corporations may contract by vote as well as by agents. Angell & Ames on Corp. (2d ed.) 163. In *Marshall* v. *Corporation of Queenborough,* 1 Sim. & Stu. 523, Vice Chancellor Leach said, " if a regular corporate resolution passed for granting an interest in a part of the corporate property, and upon the faith of that resolution, expenditure was incurred, he was inclined to think that both principle and authority would be found for compelling the corporation to make a legal grant in pursuance of that resolution."

If the vote was bad as a by-law, it may be good as a contract made with a member of the corporation. Angell & Ames on Corp. (2d ed.) 280. There is plenary evidence, on the face of the certificate, that this vote or by-law was well known to the defendants, and that they acted on it in issuing the certificate.

*J. G. Abbott & S. A. Brown,* for the defendants. As the certificate, under which the plaintiff claims, is a sealed instrument, he cannot recover in an action of assumpsit. Nor can he recover in any form of action. The contract on which he relies could not legally be made by a corporation established for the purpose of building a house for public worship. It may well be doubted whether any corporation can make a contract, at the time of issuing its stock, to become the purchaser of that stock at its par value. Such a contract, if binding, would defeat the end for which corporations are established. The defendants were incorporated for the sole purpose of building a

meeting-house ; and if this contract is sustained, it will follow that they had the power, at the time of their organization, to make a bargain whereby the meeting-house, for the building of which their charter was granted, might be taken by the stockholders and applied to any other purposes, even to the exclusion of creditors who might give them credit on the faith of their capital stock.

But if the defendants had the power to make such a contract, they deny that it has been made in such a manner as to bind them. The contract in question was made only by virtue of a by-law, passed at the meeting for the organization of the corporation. The only notice, given to the stockholders, of the intention to make such a contract, was the general notice to meet, for the purpose (among other things) of choosing a committee to frame and report a code of by-laws. Of course, no one could have anticipated the making of such a contract under such a notice. By the Rev. Sts. *c.* 44, § 2, the power of corporations, in making by-laws, is clearly defined ; and the contract in question cannot come within the power there given. The by-law is therefore void, as it attempts to regulate and control a matter which is not subject to the action of a by-law.

As the plaintiff paid his money with a full knowledge of the facts, his mistake of the law does not entitle him to recover it back in any form of action.

The opinion of the court was delivered at October term 1845.

SHAW, C. J. The court are of opinion, that the by-law, by virtue of which the plaintiff's certificate was issued, was valid. It was passed at a meeting of the persons incorporated, which was duly warned, and which was held for the purpose of accepting their charter and organizing under it, and electing a committee to frame and report a code of by-laws. The raising of funds was one of the objects necessarily embraced in the objects of the corporation, after its charter was accepted ; and by-laws respecting that object might well be passed. The provisions of the Rev. Sts. *c.* 44, § 2, as to by-laws concerning the matters there enumerated, are not restrictive but directory.

The court are also of opinion, that the by-law of the defend-

ants, and the plaintiff's subscription for shares, constituted a contract; and that the defendants had authority to make such a contract. By their act of incorporation they were authorized not only to build a meeting-house, but also to hold property, besides their house, the yearly income of which should not exceed $1500, that is, property to the amount of $30,000, to constitute a fund for parochial purposes. To borrow money, then, was an incidental power conferred on them.

The plaintiff having, on his part, performed the terms of the special contract, so as to leave a mere simple debt or duty between the parties, he is entitled to recover back the $100 in an action of indebitatus assumpsit. 2 Stark. Ev. 95. The contract, as before stated, arose out of the defendants' vote and the plaintiff's subscription. The certificate, issued under the seal of the president and clerk, was not the contract, but merely established or evinced the relation of the plaintiff as a stockholder.

*Judgment for the plaintiff.*