LANE & SAYLOR AND J. H. ROBINSON v. SCOTT & CULVER.

(Case No. 3483.)

1. SURETY — CONTRACT, CHANGE OF.— A surety is discharged by a valid agreement, made without his consent, varying the original contract in any material particular, whether the change be to his benefit or prejudice.
2. SAME — EXTENSION OF TIME.— If the contract be executory on both sides, a binding agreement extending the time of performance is a material change.
3. SAME — CONSIDERATION.— Such an agreement, where the contract contemplates mutual acts to be performed by both parties, such as a tender of specific articles by the one, and acceptance or rejection by the other, is supported by a sufficient consideration, each party being both promisor and promisee.

APPEAL from Travis. Tried below before the Hon. E. B. Turner.

Suit by M. S. Culver and James F. Scott, on the bond of R. N. Lane and W. A. Saylor, with J. H. Robinson as surety, conditioned that Lane and Saylor comply with the terms of their agreement with Culver and Scott, made the same day. By the terms of that agreement, Culver and Scott were to deliver four thousand beef cattle of specified quality, at Houston, as follows: Five hundred on July 1st; five hundred on July 15th; one thousand on August 15th; one thousand on September 15th; and one thousand on October 15, 1873; it being specified that three days were to be allowed after each day, to complete the delivery. Lane and Saylor agreed to pay at the rate of sixteeen dollars per head on the delivery of each lot. The agreement provided that each party was to enter into bond, with sureties, in the sum of $5,000, for the faithful performance of their stipulations.

Before the 1st of July, the time for the delivery of the first lot, Lane and Saylor requested the postponement of any delivery until July 25th, and the plaintiffs both testified that they delayed the delivery because of that request.

The amended petition of plaintiffs alleged a tender or offer to de-

liver one thousand cattle on July 25th, and the refusal of defendants to receive them.

The defendants denied the allegations of the original and amended petition; and the defendant Robinson, under oath, pleaded that he was only surety, and that the contract had been altered without his knowledge or consent.

The jury found for the amount of the bond against all of the defendants, and judgment was rendered accordingly. A motion for new trial was overruled, and defendants appealed.

*Terrell & Walker* and *H. L. Bentley*, for appellants.— The extension of the time for delivery of the first two lots of cattle was a material alteration of the contract, and not being consented to by Robinson, was not binding upon him. The alteration discharged the bond. They cited Yeary *v.* Smith, 45 Tex., 71; Claiborne *v.* Birge, 42 Tex., 102, and other Texas cases. Also, Story on Con., sec. 870; Chitty on Con., pp. 460–462; 3 Parsons on Con., 15, 720, 721; 1 Smith's Leading Cases, 956, 965, 966 (note, Master *v.* Miller); Wright *v.* Johnson, 8 Wend., 512; Dobbin *v.* Bradley, 17 Wend., 422; Berkhead *v.* Brown, 5 Hill, 641; 6 Hill, 540, 543.

*Shelly & Moore*, for appellees.— The pleadings of the plaintiff are sustained by the facts proved. J. F. Scott, one of the plaintiffs, testified that he delayed delivering the first cattle by request of Saylor, by dispatch dated 13th of June, till 8th of July, and next by dispatch dated 27th of June, till 25th of July. The dispatches referred to read as follows:

" Austin, 13, 187–. To M. S. Culver, Banquette, care of D. Hirsch: Delay delivery of first lot to 8th July, if you can. Will suit all parties. W. A. SAYLOR."

" Dated Austin, Texas, 27, 187–. Received at C. C., June 28th. To M. S. Culver & Co.: Arrangement made; deliver first five hundred 25th July; write fully. W. A. SAYLOR."

Culver testified that there was a change made of the time of delivery of the cattle at the instance and request of Saylor, to suit their convenience. I received several telegrams from Austin about the matter in June, 1873. The reason, as I understood, the cattle were not received by Lane and Saylor, was their failure and inability to pay for them as they contracted to do.

This testimony is not contradicted by the defense.

The question then presented by the pleading and facts is this: A voluntary extension of time to the principal, though given with-

out the surety's consent, will not release him.   To release the surety the extension of time must be by a valid and binding contract. Frois v. Mayfield, 33 Tex., 804; Hunter v. Clark, 28 Tex., 162; Payne v. Powell, 14 Tex., 601; Cruger v. Burke, 11 Tex., 694; Burke v. Cruger, 8 Tex., 66; McKecknie v. Ward, 58 N. Y., 541.

In the case of McKecknie v. Ward, 58 N. Y., 541, which was an action on a bond, W. became surety on the bond of B. for the performance of an agreement between B. and plaintiffs, whereby "the agency for the sale of their ales" at S. was let to B., he agreeing to pay on the first of each month for the amount of ale delivered, and "not to purchase" ale of any but plaintiffs.   The agreement might be terminated on three months' notice by either party.   It was held that W. was not discharged as surety, although plaintiffs neglected or forebore to enforce full payment at the times stated in the agreement, and did not give notice to W. that B.'s account was in arrears. See, also, Clarke v. Sickler, 64 N. Y., 231; State v. Manning, 55 Mo., 142; Abel v. Alexander, 45 Ind., 523· Parnham Sewing Machine Co. v. Brock, 113 Mass., 194.

BONNER, ASSOCIATE JUSTICE.— The charge of the court upon the question of the change of time for the performance of the contract, as it affected the liability of the surety, Robinson, is as follows: "Parties may change their contracts after they are entered into, and an extension of time does not necessarily release a surety; it would release him, provided he was injured by such extension, or if it appears from the evidence that the surety was put in any worse condition than he would otherwise have been."

This charge was excepted to at the time upon the following among other grounds: " 2. The charge is defective in submitting to the jury whether the surety was injured by the extension, to determine whether the alteration was material."

In addition to this defendant Robinson asked special charges, which were refused, to the effect that any material alteration in the term of the contract between plaintiffs Culver and Scott, and his principals, Lane and Saylor, without the consent of the surety, Robinson, would release him; and that the changes in the dates of the time of performance were material and would discharge him.   These questions are presented by the assignment of errors, and are the material ones for our decision.

The statement of a few well established general propositions will aid in the proper disposition of this case.

Although a mere gratuitous indulgence by a creditor to the prin-

cipal debtor — unless when demand is made under our statute (R. S., arts. 3660, 3661), by the surety upon the creditor, to institute proceedings — will not discharge the surety, for the reason that the latter has the right to pay off the debt, and be subrogated to the rights of the creditor, yet a valid agreement between the creditor and the principal, made without the consent of the surety, to extend the time of payment or performance for any definite period, will discharge the surety. This rests upon the reason that the surety, who, as such, derives no benefit from the contract, has the right to stand upon its terms strictly as made, and that to change them without his consent makes a new contract to which he is not a party, and which, consequently, is not binding on him. The inducement to have become surety, in the first instance, may have been that, if the contract should be carried out as originally made, he had the means for his own protection, when, if changed, his rights might be prejudiced. One of the essential elements of the contract of. suretyship is the equity of the surety, which depends not so much on his relations with the creditor as on his right to indemnity from his principal, and the consequent obligation on the part of the creditor not to do any act by which this right might be prejudiced. The surety had the right to be subrogated to all the rights and privileges which the creditor had when the original contract was made. The creditor had the right to enforce his legal remedy, by suit or otherwise, as soon as the debt or cause of action became due; and the surety, therefore, had the consequent right, on failure of payment or performance on the part of his principal, to resort to a court of equity to enforce the terms of the contract on the part of the principal, or to discharge the obligation in the first instance, and thereby become subrogated to this right of·the creditor to sue. This, however, he could not do, if, in the meanwhile, the creditor had made a binding agreement, varying in an essential particular the original contract. In such case the surety is not bound by that contract, for it has ceased to .exist; nor by the new contract, for he is not a party to it; and hence he would be without indemnity on it as against the principal. Bethune v. Dozier, 10 Ga., 238.

In support of the above general propositions, reference is made to the valuable and exhaustive notes and citations of authorities found in White & Tudor's Leading Cases in Equity, vol. 2, part 2 (4th Am. ed.), 1896, notes to Rees v. Berrington; Wait's Actions and Defenses, vol. 5, title "Principal and Surety," 185; Brandt on Suretyship, ch. 15, 400; Yeary v. Smith, 45 Tex., 71.

It is a further well established principle, that when the original contract has been thus varied, a court of equity will discharge the

surety without further inquiry as to whether he has been prejudiced or benefited by it, for the reason that this question, as a general rule, would not be a practicable one. As said by the Lord Chancellor in the leading case of Rees v. Berrington, *supra*, " I cannot try the cause by inquiring what mischief it (the change in the contract) might have done, for that would go into a vast variety of speculation, upon which no sound principle could be built." 2 Vesey, Jr., 542; Ducker v. Rapp, 67 N. Y., 473; Smith v. Rice, 27 Mo., 507; Miller v. McCan, 7 Paige, 459; Bonney v. Bonney, 29 Iowa, 449; United States v. Corwine, 1 Bond, 344; Bangs v. Strong, 7 Hill, 252; Boschert v. Brown, 72 Pa. St., 375; Clippinger v. Creps, 2 Watts, 49; Bethune v. Dozier, 10 Ga., 238; also White & Tudor's Leading Cases in Equity, Wait's Actions and Defenses, and Brandt on Suretyship, above referred to.

Under the above authorities, the court below erred in the general charge as given to the jury, so far as the same affected the rights of the surety, Robinson, and in the refusal of the charges asked by him upon this point, which must lead to a reversal of the judgment, if the facts were such as to invoke the rules above laid down. This will depend upon the question whether the record shows that there was a valid agreement to change the time of performance of the original contract. Under that contract the beeves were to have been delivered at certain specified dates; and to show that the times of delivery were considered material and of the essence of the contract, and doubtless to provide for the usual contingencies which might delay a prompt delivery in such cases, it was expressly agreed in the original contract that three days should be allowed Culver and Scott within which to make the delivery, after the particular days specified. This, by a well known rule of construction, would show that the question of time had been particularly considered and agreed upon; and the three days additional having been expressly allowed, would negative the idea that it was implied that longer time should be given.

In the amended petition it is averred " that after the making of said (original) contract, and before the date of delivery of the first lot of said cattle, said Lane and Saylor requested plaintiffs to postpone the delivery of the first and second lots of cattle until about the 25th day of July, 1873, because they could not sooner pay for the same; that in pursuance of said contract, the plaintiffs, in compliance with the request of said defendants Lane and Saylor made under said contract, did have one thousand head of said cattle at Houston, in the county of Harris, ready to deliver to said defendants on the 23d day of July, 1873; that said cattle were then in good condi-

tion, and averaged one thousand pounds gross in weight per head; that on the 25th day of July, 1873, they did tender to and offer to deliver to said defendants Lane and Saylor the said one thousand head of cattle," etc.

Scott, one of the plaintiffs, testifies that: "I delayed delivering the first cattle by request of Saylor of date 13th June, first till 8th July, and next (of 27th) till 25th July, by dispatch from Saylor from Austin. I had the cattle there by 24th for first lot and second lot ready to be delivered on the 28th July."

Culver, the other plaintiff, testifies that "There was a change made of the time for the delivery of the cattle at the instance and request of Saylor to suit their convenience."

The evidence shows that, in pursuance of this change, no actual delivery or offer of delivery was made at the time designated in the original contract.

This not being an executed contract, but an executory one, under which the liability of Lane and Saylor, and Robinson as their surety, depended upon certain conditions precedent to be performed in the future by Culver and Scott, Robinson, as such surety, had the right to demand that these conditions precedent should have been strictly complied with.

The record shows that the time of delivery was extended to a definite period beyond that fixed by the original contract, under a proposition by Lane and Saylor, and which, if not formally accepted by Culver and Scott, was, at least, acted upon by them; and it does not appear that this extension was made with the consent of the surety, Robinson. This, in our opinion, would be such material change in the original contract as would, under the authorities, release the surety, if made upon a sufficient consideration; and this presents the only remaining material question.

The general rule upon the subject of the sufficiency of consideration is that the consideration need not be mutually beneficial, but that it must be either a benefit resulting to the party himself who makes the promise, or to some third party, or some loss, inconvenience or change of obligation upon the part of the promisee. Chitty on Contracts, 28.

The rule is thus laid done by Mr. Justice Lipscomb in Bason v. Hughart: "We believe the doctrine to be well settled, that, to constitute a consideration valid in law, it is not essential that it should be mutually beneficial to the promisor and the promisee; that it is sufficient if one or the other is to receive a benefit, or to be injured by it. In Townsley v. Sumrall, 2 Pet., 182, it is said by the supreme court of the United States, 'that damage to the prom-

isee constitutes as good consideration as benefit to the promisor.'"
2 Tex., 479; Hendricks *v.* Snediker, 30 Tex., 306.

In a case like the present, where, under the contract, mutual acts
were to be performed by both parties — as a tender of specific articles
by the one, and an acceptance or rejection by the other — when, be-
fore the date of execution, a proposition varying the original con-
tract is made by one party and accepted and acted upon by the
other, each may be considered as occupying the position of both
promisor and promisee.

If the original contract was for the payment of money upon a
consideration *executed*, then, after maturity, and when the right to
demand payment had become fixed and absolute, a promise by the
creditor to extend the time of payment, if the debtor would at the
end of such time pay the debt and interest, is without consideration
and void. Gibson *v.* Irby, 17 Tex., 173. This is a well established
doctrine.

But we do not think that it would apply when the promise to
extend the time was made before the maturity of the contract, in a
case like the present, of an *executory* contract for the delivery of
specific articles, under which mutual acts are to be done by both
parties in the future. It might very well be that Lane and Saylor,
by reason of their new promise, and which, if not formally accepted
by Culver and Scott, was not rejected by them, but acted upon,
may have relaxed their efforts to get the money by the day desig-
nated in the original contract, and may have failed to have been
present at the time and place first appointed to examine and receive
or reject the beeves. Culver and Scott, acting upon this new prom-
ise, did not in fact have them ready at the time and place designated
in the original contract for delivery; but even if they had done so,
it is not believed that they could, under the circumstances, in the
absence of Lane and Saylor, have made such valid tender as to
have changed the relations of the parties from that of vendors and
vendees to that of bailors and bailees.

Although this case seems to be a hard one, we are constrained to
the opinion that, under the law as applied to the facts, there was
such valid and binding change of the original contract, in an assen-
tial particular, without the consent of the surety, Robinson, as to
constitute a sufficient ground for his release. It is scarcely deemed
necessary to say that a different rule would apply as between Cul-
ver and Scott on the one hand, and Lane and Saylor on the other.

REVERSED AND REMANDED.

[Opinion delivered June 20, 1882.]