HOWE GRAIN AND MERCANTILE COMPANY v. G. C. JONES ET AL.

Decided April 22, 1899.

**1. Corporation May Purchase Its Own Stock.**

A corporation is not prohibited by common law or by the statute from purchasing its own stock, and article 665 of the Revised Statutes does not apply to such a purchase.

**2. Same—By-law as Constituting a Contract.**

A by-law of a private corporation, providing that on the death of any stockholder his stock, with any dividends, shall be paid to his legal representatives, if it is as much as a year old and ninety days notice of intention to so withdraw it has been given, is valid, and a compliance with such conditions creates a binding contract of withdrawal.

APPEAL from the County Court of Grayson. Tried below before Hon. J. H. WOOD.

*Head, Dillard & Muse,* for appellant.

*Wolfe, Hare & Semple,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was instituted by appellees against appellant, a corporation, to require it to purchase from them 100 shares of its capital stock in compliance with one of its by-laws. A trial before the court on November 2, 1898, resulted in a judgment in favor of appellees for $570, from which this appeal is prosecuted, notice of appeal, appeal bond, and assignment of errors having been given and filed in compliance with our statute and rules of court.

The parties filed in the trial court a written agreement as to certain facts, which agreement the court made a part of its findings of fact. We find the following facts are shown by said agreement:

On the 25th day of August, 1887, the Farmers Alliance Co-Operative Association was duly incorporated, with its principal office in the town of Howe, in Grayson County. The purpose for which said corporation was formed was the owning and managing of a merchantile establishment, buying and selling grain and other farm products, and buying and selling such real estate as may be necessary for carrying on such business incident or appertaining thereto for the mutual profit and benefit of its stockholders and patrons who are members of the order of the Farmers Alliance.

The capital stock was $20,000.

Thereafter, on April 26, 1894, said charter was amended, wherein among other things its name was changed to the "Howe Grain and Mercantile Company," and the purpose for which it was formed was changed to the owning and managing a mercantile establishment, and buying and selling grain and other farm products, and for the purpose of manufacturing corn and wheat into meal and flour and other products produced by the same, and for the purpose of buying and selling such real estate only as may be necessary for carrying on the business of such corporation, and for the purpose of buying and selling goods, wares, and merchandise at retail, under and by virtue of section 24, article 566, Revised Statutes, as amended by the Act of the Twenty-second Legislature.

After the company was originally chartered, by-laws were adopted, among which appear the following: "Art. 2, Sec. 9. Any white person actively engaged in agricultural pursuits may become a stockholder in this company: provided, that no stockholder who ceases to be engaged in agricultural pursuits shall forfeit the right to hold or take additional stock in this company; and provided, that no stockholder shall be entitled to own more than $500 in stock in said company. Art. 2, Sec. 10. In the case of death of any stockholder, the stock, with dividend if any, shall be paid to their legal representatives at the following annual meeting; provided, that the stock shall have remained in the company for one year; and provided, that ninety days notice of such withdrawal of stock has been given the secretary." "Art. 3, Sec. 1. The profits of this company shall be disposed of as follows: Ten per cent of profits may be re-

tained as a sinking fund; the remainder shall be divided among the stock-holders in proportion to the amount of their stock." "Art. 3, Sec. 5. In becoming a stockholder of this company, I hereby agree to further bind myself to assume such responsibilities and conform to such requirements and risks as are made incumbent upon me by the constitution and by-laws of the same."

After the incorporation of said company and the adoption of said by-laws, J. C. Jones, a citizen of Grayson County, Texas, being duly quali-fied by the terms of the constitution and by-laws of said corporation, sub-scribed and paid for 100 shares of the capital stock of said corporation of of the par value of $5 each, certificates for which stock were duly issued to the said J. C. Jones.

Jones died intestate in 1897, while he was the owner of said stock, and there was no administration upon his estate, nor any necessity for admin-istration, and plaintiffs (appellees) are his heirs and became entitled to said stock. Jones had been the owner and holder of said stock, and a stockholder in said corporation for more than a year previous to his death, and plaintiffs gave ninety days notice to the defendant corpora-tion of their desire to withdraw the amount of said stock and dividend previous to the annual meeting of said corporation, held on June 4, 1898, and defendant failed to comply with said request.

In addition to the above the trial court filed the following conclusions of fact, which we also find and adopt in addition to those found above: "I find the facts to be true as set forth in the written agreement between the parties which is hereto attached and made a part hereof, and in addi-tion to the facts as set forth in said agreement I find that the stock in the defendant corporation was worth at the end of the fiscal year, June 4, 1897, 12 cents on the dollar above par; at the end of the fiscal year, June 4, 1898, 14 cents on the dollar above par; and on September 1, 1898, 29 cents on the dollar above par. I also find that plaintiffs are entitled to the value of said stock at the end of the fiscal year 1898, making about $570. The value of the stock is arrived at by estimating the fair cash value of the property of the corporation on hand at each of the times named, which included the 10 per cent net profits that had been set aside each year as surplus or undivided dividends under the by-laws. I also find that the defendant previous to the time plaintiffs made application to withdraw their stock had on several occasions permitted other stock-holders to withdraw their stock in compliance with the by-laws set forth in the agreement, such withdrawal being by living stockholders, and the defendant in each case paying the face value of the stock only. I also find that defendant is now, and ever since June, 1898, has been entirely solvent and able to pay all creditors after paying this judgment. I find that defendant now has a surplus fund of $1886, and net profits undivided of $2000."

The trial court filed the following conclusions of law, which we adopt:

"1. I conclude as a matter of law that section 10 of article 2 of the by-laws of defendant is a valid by-law.

"2. I further conclude that said by-law constituted an offer on the part of the defendant to the plaintiffs as the legal representatives of J. C. Jones, a deceased stockholder, which, when it is accepted by plaintiffs and when the requirements specified in said by-laws had been complied with on the part of plaintiffs, became a binding contract on the part of defendant to pay plaintiffs the value of said decedent's stock in the defendant company with dividends accrued and unpaid, and that for a breach of such contract this action lies.

"3. I further conclude that said by-law conferred on plaintiffs the right to withdraw the value of said stock from defendant and receive therefor from defendant the value of said stock with dividends accrued and unpaid, and that this action lies against defendant for a refusal on its part to allow plaintiffs to so withdraw said value of said stock, and pay them its value with such dividends.

"4. I therefore conclude that plaintiffs are entitled to recover from defendant the sum of $570.

There is no statute in this State expressly prohibiting a corporation from purchasing its own stock. We do not think that article 665, Revised Statutes 1895, was intended to apply to such a purchase. Bond v. Mfg. Co., 82 Texas, 309; Taylor on Corp., sec. 295; Curtis v. Leavitt, 15 N. Y., 54. Nor does it appear that there is any principle of common law which prohibits such a purchase. Bank v. Bruce, 17 N. Y., 507. Such a purchase does not necessarily reduce its capital stock. The stock so purchased may be reissued by the corporation. Cook on Stockh., sec. 314.

In this case the corporation has on hand a surplus fund, and net profits undivided to the amount of $2000. It is more than solvent, and after paying plaintiffs the amount of their stock and dividends it will have left, more assets than necessary to pay its creditors in full. Under these facts we conclude that by-law 10 of article 2 should be enforced, and that there is no error in the judgment. Cook on Stock and Stockh., secs. 311, 312; Reese on Ultra Vires, sec. 120; 2 Beach on Corp., sec. 395; Boone on Corp., secs. 107, p. 147; Loan Assn. v. Paxton, 33 S. W. Rep., 389; B. and L. Assn. v. Biering, 86 Texas, 476; Dupee v. Water Power Co., 114 Mass., 37; Lumber Co. v. Foster, 49 Iowa, 25, same case, 31 Am. Rep., 140; Bank v. Bruce, 17 N. Y., 507; Davis v. Proprietors, etc., 49 Mass., 321; Loan and Trust Co. v. Abbott, 161 Mass., 148, same case, 38 N. E. Rep., 432; Blalock v. Mfg. Co., 110 N. C., 199, same case, 14 S. E. Rep., 501; Ely v. Guest, 94 Pa., 160; Board of Commissioners v. Thayer, 94 U. S., 619; Clapp v. Peterson, 104 Ill., 26.

*Affirmed.*