ANDERSON v. FIRST NAT. BANK OF LA GRANGE. (No. 8499.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 13, 1917. On Application for Leave to File Motion for Rehearing, Feb. 10, 1917.)

1. BILLS AND NOTES ⟨⟩444 — GUARANTEED NOTES—DUTY OF HOLDER.

Mere knowledge on the part of a bank, holder of notes, that a third party was an indemnitor and had agreed to pay the same, did not impose on the bank any obligation to pursue the third party and exhaust securities owned by him and in the bank's hands before suing the maker.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1287–1293; Dec. Dig. ⟨⟩444.]

2. PLEADING ⟨⟩34(3)—DEMURRER.

In testing the sufficiency of the answer as against general demurrer, all reasonable intendments in its favor will be indulged in.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 69; Dec. Dig. ⟨⟩34(3).]

3. CONTRACTS ⟨⟩105—LEGALITY.

Where the organizer of a bank induced defendant to subscribe for stock and gave a note, agreeing to purchase defendant's stock and to pay the note, which was in the hands of a bank, such agreement was not unenforceable, as violative of the laws of the state governing the incorporation of state banks, or as contrary to moral and public policy.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 477, 478, 480–497; Dec. Dig. ⟨⟩105.]

4. CORPORATIONS ⟨⟩65—CORPORATE STOCK—"PROPERTY."

Stock in a corporation is "property."

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 165–171; Dec. Dig. ⟨⟩65.

For other definitions, see Words and Phrases, First and Second Series, Property.]

5. CONTRACTS ⟨⟩10(1)—MUTUALITY—AGREEMENT TO PAY STOCKHOLDER'S NOTE.

Where the organizer of a bank induced defendant to subscribe to its stock, agreeing to purchase defendant's stock on request, and to pay the note executed by defendant for it, such agreement was not unenforceable for a want of mutuality on the ground that, while the organizer of the corporation was obligated to pay the note to the holder bank on defendant's request, there was not reciprocal obligation on defendant's part to request the payment of the note to the bank.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 21; Dec. Dig. ⟨⟩10(1).]

6. BANKS AND BANKING ⟨⟩39—CONTRACTS—CONSIDERATION.

Where the organizer of a bank induced defendant to subscribe to its stock and execute his note, agreeing to purchase defendant's stock, promising to pay defendant's note on request and to indemnify defendant against all loss, the organizer's promises were supported by sufficient consideration.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 44–48; Dec.Dig. ⟨⟩39.]

7. FRAUDS, STATUTE OF ⟨⟩148(2)—PLEADING.

Ordinarily, where a contract can only be enforced if written, an allegation that it was made, without stating whether it was in writing or by parol, will, as against general demurrer, be sufficient; the presumption being that the pleader intended to set forth an enforceable contract, placing on defendant the burden of pleading the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 354; Dec. Dig. ⟨⟩148(2).]

8. FRAUDS, STATUTE OF ⟨⟩23(1)—INDEMNITY CONTRACT.

A contract of the organizer of a corporation to indemnify a subscriber to its stock, who executed a note against all loss, was merely collateral to that evidenced by the note, and so was not subject to the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 18, 19; Dec. Dig. ⟨⟩23(1).]

9. LIMITATION OF ACTIONS ⟨⟩56(2)—STATUTE OF LIMITATIONS—CONTRACT OF INDEMNITY.

The liability of the organizer of a corporation, under his contract to indemnify against all loss a subscriber to its stock who executed a note, did not begin, and was not intended to begin, until after the subscriber had suffered loss or damage, because of the execution of the note to which the contract of indemnity related.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 308; Dec. Dig. ⟨⟩56(2).]

10. APPEAL AND ERROR ⟨⟩754(1)—AFFIRMANCE—WAIVER OF ERROR.

Where the numerous special exceptions urged to appellant's answer were substantially general demurrers, being mere reasons why the general demurrer was well taken, though a special exception includes a general demurrer, and though the action of the trial court in sustaining the special exceptions has been waived by failing to assign error thereto, the judgment will not be affirmed, regardless of the trial court's action on the general demurrer.

[Ed. Note.—For other cases, see Appeal and Error. Cent. Dig. §§ 3086–3089; Dec. Dig. ⟨⟩754(1).]

11. APPEAL AND ERROR ⟨⟩917(2)—PRESUMPTION—AMENDMENT OF PETITION.

Where the trial court has sustained a general demurrer, the Court of Civil Appeals ordinarily will presume that the litigant against whom the ruling was made will not feel called upon to amend his petition as called for by some special exception intended to reach some informality only, though the special exception is well taken.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3707, 3709; Dec. Dig. ⟨⟩917(2).]

On Application for Leave to File Motion for Rehearing.

12. APPEAL AND ERROR ⟨⟩833(3)—REHEARING—TIME TO FILE MOTION—EXCUSE.

Where counsel for appellant "charged his mind that February 3d was the last day on which motion for rehearing could be filed," and moved his law offices, so that his affairs were in disorder, with the result that motion for rehearing was presented to the clerk February 2d, whereas the 15 days for filing motion under Vernon's Sayles' Ann. Civ. St. 1914, art. 1641, expired January 28th, application to file motion for rehearing will be denied; appellee opposing on account of the crowded condition of the docket of the Supreme Court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3232; Dec. Dig. ⟨⟩833(3).]

Appeal from District Court, Tarrant County; B. M. Terrell, Judge.

Suit by the First National Bank of La Grange against A. J. Anderson, who pleaded over against William Reeves. From a judgment for the bank and for Reeves on Anderson's cross-action, the latter appeals. Affirmed in part; reversed and remanded in part.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Chas. T. Rowland and Mike E. Smith, both of Ft. Worth, for appellant. Stanley Boykin and Bryan, Stone & Wade, all of Ft. Worth, for appellees.

CONNER, C. J. As tried, this suit was one by the First National Bank of La Grange against A. J. Anderson to recover upon two promissory notes executed by Anderson and made payable to the bank, aggregating $5,000, and wherein the appellant, Anderson, in addition to the defenses presented to the plaintiff's suit as hereinafter shown, also pleaded over against one William Reeves, who had been made a party to the suit. That part of appellant's answer and cross-petition material on this appeal is as follows:

"(5) The defendant Wm. Reeves having been made a party to this cause and having answered herein, for cause of action against the defendant Wm. Reeves, and for further special answer, this defendant shows: That on or about the 17th day of February, 1908, the defendant, Wm. Reeves, being desirous of organizing and incorporating, under the laws of this state, a trust company and banking company under the name of First State Bank & Trust Company of Ft. Worth, Tex., and desiring to secure shareholders therein of good standing and credit, sought this defendant and solicited him to subscribe to $5,000 of the capital stock of said proposed corporation, which this defendant consented to do, but upon the following condition, to wit: That it was agreed by and between this defendant and the said defendant Wm. Reeves that this defendant would execute his personal promissory note to the said Wm. Reeves in the sum of $5,000, and the said Wm. Reeves would negotiate said note for the money with which to pay for said shares of stock that this defendant's name would be entered, and he was to become a subscriber to 50 shares of capital stock of said corporation representing $5,000 thereof, and that the money so realized from the negotiation of said note would be appropriated and applied in payment for the shares of stock so subscribed for by this defendant. That prior to and at the time of the execution of said note, and in order to induce this defendant to execute same and subscribe for said stock, the said defendant Wm. Reeves promised and obligated himself to this defendant, whenever so requested by this defendant, to fully pay off and discharge said note and procure this defendant's release therefrom, and agreed and obligated himself that he would at all times indemnify and hold this defendant harmless against the execution of said note, and that the said defendant Wm. Reeves, when said stock was issued to and in the name of this defendant, would retain the possession of the same, so that, when so requested so to do by this defendant, he would pay off and discharge said note and become the owner of said shares of stock in consideration of the payment so made by him, the said Wm. Reeves, all of which this defendant is ready to verify.

"(6) That in pursuance of the contract and agreement set forth in paragraph 5 hereof the said Wm. Reeves did assign and negotiate said note of $5,000 executed to him by this defendant, either to the First National Bank of Caldwell or the First National Bank of La Grange, secured the cash thereon, and appropriated and applied the proceeds thereof to the payment in full for the shares of stock in said banking corporation subscribed for by this defendant, caused said shares of stock to be issued to and in the name of this defendant, and retained possession of the same under and by virtue of the agreement between him and this defendant, as alleged in paragraph 5 hereof. That the said

Wm. Reeves thereafter and from time to time procured a renewal of said original note, and the same was finally transferred to the First National Bank of La Grange and divided into two notes, one for the sum of $1,000 and one for the sum of $3,500, being the notes sued on herein, the amount having been reduced from $5,000 to $4,500, all of which was done by the said Wm. Reeves without any payment thereon by this defendant. This defendant merely executed the several renewal notes at the instance and request of the said Wm. Reeves.

"(7) That this defendant, at the time of the execution of the said original $5,000 note and at all times since, did and has fully relied upon the original agreement so made and entered into by him and the said Wm. Reeves, and the said Wm. Reeves has at the time of the several renewals of said note and at all times since recognized and ratified the said agreement to hold this defendant harmless therefrom, and did not indicate his intention of repudiating the same until a short time prior to the institution of this suit. That in executing said original $5,000 note, and all subsequent renewals thereof, this defendant believed the representations of the said Wm. Reeves made, as aforesaid, to be true. That he relied thereon, and was induced thereby to subscribe for said shares of stock and execute said note, as well as each and all of the renewals thereof, in the absence of which representations and contract this defendant would not have executed said original and renewal notes and subscribed for said shares of stock as herein set forth.

"(8) That by reason of the foregoing facts the defendant Wm. Reeves promised and became bound and obligated to pay off and discharge the notes herein sued on and to procure this defendant's release therefrom, yet, though often requested by this defendant so to do, the defendant Wm. Reeves has failed and refused, and still fails and refuses, to keep and perform his said contract to hold this defendant harmless therefrom, to the damage of this defendant in the sum of six thousand ($6,000) dollars.

"(9) This defendant denies that the plaintiff herein is an innocent holder of the notes therein sued on for a valuable consideration, before maturity, in good faith, and without notice of the equities of this defendant, as herein set forth, and avers that the plaintiff and the First National Bank of Caldwell had knowledge, or were chargeable by law with notice, of the nature of the transaction or agreement so made between this defendant and the said Wm. Reeves, and had knowledge of said original $5,000 note, and that, as between this defendant and the said Wm. Reeves, the said Wm. Reeves was bound and obligated to pay off and discharge the same.

"(10) This defendant alleges on information and belief that at the time of the execution of each and all of said notes the said defendant Wm. Reeves procured the execution thereof, and acted for and as the representative of the First National Bank of Caldwell and of the plaintiff, the First National Bank of La Grange.

"(11) This defendant is informed and believes, and alleges on information and belief: That at the time of the execution of the notes herein sued on plaintiff held a written guaranty, executed to it by the defendant Wm. Reeves, whereby the said Wm. Reeves was bound and obligated as a guarantor on said notes, and that at the time of the maturity of each of said notes held collateral securities or effects belonging to the said Reeves of value more than sufficient to fully pay said notes. That plaintiff either holds said collateral securities, or has wrongfully and without the consent of this defendant, and with notice of this defendant's rights and equities, and with the intent to shield the said Reeves, and to the injury of this defendant, wrongfully released said collateral, or secreted or disposed of the same in some manner unknown to this de-

fendant, or that plaintiff has heretofore applied said collateral securities to the payment of said notes, whereby this defendant was and is released from liability thereon to the plaintiff herein. If this defendant should be mistaken in the allegations that the plaintiff has released or disposed of said collateral securities, and the same have not been applied to the payment of said notes, then the same should be now so applied, for which this defendant prays.

"(12) That on March 26, 1912, the defendant Wm. Reeves for a valuable consideration purchased all the outstanding stock of the First State Bank & Trust Company not then owned by him, took over all of the assets of said bank, and agreed to pay off and discharge the liabilities of the several stockholders therein by reason of their subscriptions to the capital stock thereof, including the notes herein sued on, whereby he became bound and obligated to pay and discharge the said notes, which, though often requested, he has heretofore failed and refused to do.

"Wherefore this defendant prays that he be dismissed and go hence without day, but, if it should be held that the plaintiff is entitled to recover anything against this defendant, then that he have judgment over against the said Wm. Reeves in a like sum; and he prays judgment for costs, and for such other general and special relief as he may be entitled to, either in law or in equity."

The plaintiff bank and Wm. Reeves presented general demurrers and numerous special exceptions to the answer of the defendant Anderson, all of which were sustained by the court, and Anderson, having declined to amend, suffered a judgment in favor of the bank for the sum of $5,463.33, and in favor of Reeves upon Anderson's cross-action, and Anderson prosecutes this appeal.

[1] We do not feel prepared to hold that the court erred in sustaining the demurrers of the plaintiff bank. Appellant says, quoting from his brief, that:

"It is not contended that the cross-petition is a defense against the plaintiffs' cause of action on the notes, except in so far as the facts set forth in paragraph 11 of Anderson's amended cross-petition may be a defense."

By a consideration of this clause of appellant's answer, which we have quoted, it will be seen that it was not alleged that Reeves was a party to the execution of the notes sued upon, as indeed from the record it is undisputed that he was not. The relation of principal and surety, therefore, as between Anderson and Reeves, existed, if at all, by reason of, facts and circumstances disassociated from the notes upon which the plaintiff declared. In other words, the complaint in said paragraph of appellant's answer is, substantially, only to the effect that Reeves was obligated to appellant as a guarantor, of which the bank had knowledge, and that the bank held collateral securities or effects belonging to Reeves of value sufficient to pay the notes. It is not alleged, in that clause of the answer or elsewhere, nor is it contended on this appeal in behalf of Anderson, that there was any contractual relation between Anderson and the bank to the effect that such collateral, if any, should be applied to the payment of the notes sued upon. Nor is it alleged or pretended that

Reeves was insolvent, or that for some other sufficient reason equity would require the bank to first exhaust the securities owned by Reeves before pursuing its remedy upon the notes against Anderson. Mere knowledge on the part of the bank that Reeves was guarantor of the claim would not impose upon the bank any obligation to first pursue the indemnitor and exhaust the securities owned by him before prosecuting its suit against the maker of the note. For aught that appears in appellant's answer, or otherwise in the record, Wm. Reeves is solvent and able to fully respond in damages, if it be true, as appellant alleges, that he contracted to indemnify him against loss because of the execution of the notes. We therefore conclude that the court committed no error in sustaining the demurrers of the bank, and that the judgment in its favor against appellant, Anderson, must be accordingly affirmed.

We are of opinion, however, that the court erred in sustaining the general demurrer of the appellee Wm. Reeves. Appellee insists that the agreement set up in the twelfth paragraph of the appellant's answer, to the effect that the defendant Reeves, for a valuable consideration, had purchased all of the outstanding stock of the First State Bank & Trust Company, took over the assets of the bank, and agreed to pay off and discharge the liabilities of the several stockholders by reason of their subscriptions to the capital stock, including the note sued on, is in violation of the laws of this state governing the incorporation of state banks, and contrary to good morals and to public policy. It may be, and is doubtless, true that it would be contrary to public policy to permit the Bank & Trust Company to do business otherwise than as specified in the laws relating to such corporations, or to have its business or assets managed or controlled by a single stockholder, instead of by directors, as provided in such laws. Such an effort, indeed, might authorize a dissolution of the corporation; but it does not appear from the answer excepted to that the corporation as such either did or was attempting to do anything forbidden by the statutes. The case presented in the clause of the answer under consideration was merely one in which one of the stockholders in the First State Bank & Trust Company purchased "all of the outstanding stock," presumably including that owned by appellant, and as consideration therefor agreed to pay off and discharge, not the liabilities of the corporation, but the liabilities of the several stockholders incurred by reason of their subscription to the capital stock, including the notes declared upon in this case.

[2, 3] In testing the sufficiency of the answer as against a general demurrer, all reasonable intendments will be indulged; and if Reeves, as at least inferentially alleged, purchased appellant's stock, and in consid-

eration therefor agreed to pay the note sued upon in this case, we see no valid reason why the agreement is not enforceable. The agreement in no wise lessens the obligation of the corporation to its creditors generally, nor relieves the stockholders of the corporation of any liability under which they may rest for the payment of its debts. In this state it has been held that a corporation may contract to purchase its own stock. See Howe Grain & Mercantile Co. v. Jones, 21 Tex. Civ. App. 198, 51 S. W. 24; Hardware Co. v. Sanger, 151 S. W. 1104. In the latter case the court said:

"There is no provision in the charter prohibiting the purchase of its stock by the corporation, nor is such action prohibited by the statutes of Texas, and in the absence of such provisions in charter or statute the general rule, as applied * * * by the weight of authority, seems to be that a solvent corporation has the authority to purchase its own stock, where the purchase is made in good faith. It was so held in Howe Grain & Mercantile Company v. Jones, 21 Tex. Civ. App. 198, 51 S. W. 24, and that case has been cited with approval in several state courts, and the doctrine of that case is recognized and sustained in a large majority of the states of the Union."

[4] If the corporation may purchase its own stock, we see no reason why an individual stockholder may not purchase the stock of other stockholders. Stock in a corporation is property, and the subject of free sale and delivery, and we know of no provision of the statutes which would inhibit a purchase by a stockholder, as it was alleged Reeves was. Nor do we think it can be said that other portions of appellant's answer setting up the alleged agreement on the part of Reeves are subject to the objection that it was against public policy and void for that reason. In the case of Morgan v. Struthers, 131 U. S. 246, 9 Sup. Ct. 726, 33 L. Ed. 132, it was held, quoting from the headnote, that:

"A contract, fair and honest in itself, and untainted with actual fraud, entered into by a subscriber of stock with other subscribers, to the effect that they will purchase the same, and pay to him the amount paid by him, if at a time specified he chooses to sell the same, is not contrary to public policy, and can be enforced against the party to it."

In that case it appears that the promoters of a corporation sold to J. P. Morgan 400 shares of the stock, agreeing that if at the end of a year Morgan should desire to sell the shares at the price paid by him, the promoters, Blair, Struthers, and Foster, would purchase the same at the price paid with interest. At the end of the first year the agreement was extended another year, and then Morgan notified Blair and Struthers that he desired to avail himself of the terms of the agreement to resell the stock to them. The parties refused to comply with the contract to repurchase, whereupon Morgan instituted suit. The circuit judge, among other things, instructed the jury, in effect, that if other subscribers were not informed that plaintiff had this agreement as a part of his subscription contract, then the agreement was in the eye of the law a fraud upon the other subscribers, who did not receive and were not informed of the existence of such an agreement, and would be contrary to the policy of the law, and that in such event plaintiff could not recover, and, further, that if the jury found that the agreement sought to be enforced in that suit was not made known to other subscribers, and if they were not afforded an opportunity to avail themselves of like security, the contract was void and could not be enforced. The Supreme Court of the United States held that this instruction was erroneous, and, among other things, said:

"We cannot concur in this conclusion. We are not prepared to affirm that there is a public policy which operates such a restraint upon the transfer of stock in a corporation as to render the contract in question, conceded to be valid and fair in itself, fraudulent as to the cosubscribers with the plaintiff for the 6,000 shares sold by the company and to render it invalid against the party to it, who, it is admitted, has no equity or justice in his favor. Nor do we assent to the proposition upon which this conclusion rests. That proposition is that, when a man purchases or subscribes to shares of stock in an incorporated joint-stock company, there is upon him, in addition to the express terms of the subscription contract, an implied obligation, incident to the common enterprise, which restrains him from making any engagement with other individuals to secure his own stock against risk, unless the other subscribers are informed of it and put upon an equal footing as to such security. * * * Counsel for defendant urges that, notwithstanding this right to make an absolute sale of his stock belongs to each subscriber, the policy of the law forbids one of them, whose act of subscription may be held out as an inducement for others to subscribe, from making a contract of future sale with a view to secure his investment, and renders such a contract void, because many costockholders 'may have been chiefly induced to subscribe by a knowledge that so prominent and successful an operator was willing to risk his money in such an adventure, and who, had they been told that he had exacted a private security or guaranty which availed to give him the benefit of both the experiment in business and of getting back his money, with interest, if it did not succeed, would assuredly either have refused to subscribe or have demanded a similar guaranty. Moreover, they had a right to suppose that the new firm was to have the countenance of Mr. Morgan, and probably his assistance in the future.' This is a palpable misconception of the nature of the transaction. There was nothing in the prospectus, or in the subscription contract, or in the nature of the enterprise, to justify such a presumption or expectation on the part of the other stock subscribers. It is just in this respect, especially, that an incorporated joint-stock company differs from an ordinary copartnership. In the latter, the individual members of the firm are presumed to, and in general actually do, contribute to the common enterprise, not only their several shares of partnership capital, but also their individual experience, skill, or credit, no member having the right to sell out his interest or to retire from the firm without the consent of the copartners, and if he does either, the act amounts to a dissolution of the partnership. Pars. Partn. 171. The very reverse, as we have said, is the case of a joint-stock corporation, in which each stockholder, whether by purchase or original subscription, has the right, unless restrained by the charter or articles of association, to sell and transfer his

shares, and, by transferring them, introduce others in their stead. * * * The conclusions to which we have come on the questions discussed dispense with any consideration of the other point presented by the plaintiff in error, viz. that the defendant should be estopped from setting up the invalidity of the contract sued on because he is a party to it; for, as we have found the contract valid and legal, the question of estoppel does not arise."

The Supreme Court of Iowa, in Wisconsin Lumber Co. v. Greene, 127 Iowa, 350, 101 N. W. 742, 69 L. R. A. 968, 109 Am. St. Rep. 387, upheld the contract of a telephone company to repurchase the stock of a subscriber in event the company sold any of its connections, franchises, or business. It was held, quoting from the syllabus:

"A corporation has power to make valid contracts for the repurchase of its own stock in the absence of charter restrictions," and "a corporation cannot refuse to carry out its contract to repurchase the stock of certain subscribers upon certain contingencies on the ground that other stockholders were not given the same right to return their stock."

[5] Nor do we think the contract set up in paragraphs 5, 6, 7, and 8 of the defendant's answer unenforceable, as appellees insist, because of a want of mutuality; the contention being that, as alleged, while Reeves was obligated to pay the note to the bank upon request of Anderson, there was no reciprocal obligation on Anderson's part to "request" the payment of the note to the bank. In discussing the subject of mutuality of contracts, the editors of 6 R. C. L. § 93, p. 686, note the fact that in many judicial decisions language is to be found to the effect that in order that a contract may be enforceable there must be mutuality, but say that if by mutuality of obligation it is meant that a contract must be binding on both parties, so that an action may be maintained by each against the other, the statement that mutuality of obligation is essential to every contract "is too broad." In the following section it is further said:

"If mutuality, in a broad sense, were held to be an essential element in every valid contract, to the extent that both contracting parties could sue on it, there could be no such a thing as a valid unilateral or option contract, or a contract evidenced by a subscription paper, or a contract to enforce a reward offer, or a guaranty, or in many other instances readily put in ordinary business affairs. As a unilateral contract is not founded on mutual promises, the doctrine of mutuality of obligation is inapplicable to such a contract. If the promisor has received a consideration, his promise is binding, and may be aptly termed an obligation; but, as there is no promise on the part of the promisee, there can be no mutual obligations. Accordingly, where one makes a promise conditioned upon the doing of an act by another, and the latter does the act, the contract is not void for want of mutuality, and the promisor is liable, though the promisee did not at the time of the promise engage to do the act; for upon the performance of the condition by the promisee, the contract becomes clothed with a valid consideration, which relates back and renders the promise obligatory. An option, supported by a consideration, furnishes another illustration of a contract which is valid notwithstanding the lack of mutuality. It is no objection to the va-

lidity of the contract that the holder of the option is under no obligation to exercise it. Similarly the privilege of purchasing given a lessee, in case the lessor makes a sale of the premises, is not invalid on the ground that it is wanting in mutuality, since this privilege is part of the consideration for accepting the lease."

[6] The text quoted seems to be supported by the authorities cited in the footnotes, and it is to be further noted in this connection that, as alleged, the contract by Reeves was of a twofold character: One was a promise to pay the note upon request; the other, an agreement to indemnify appellant against all loss. And as it seems to us a sufficient consideration for the promises of Reeves is presented in the pleading. It is said in Lane v. Scott, 57 Tex. 367:

"We believe the doctrine to be well settled that, to constitute a consideration valid in law, it is not essential that it should be mutually beneficial to the promisor and the promisee; that it is sufficient if one or the other is to receive a benefit, or to be injured by it. In Townsley v. Sumrall, 2 Pet. 182 [7 L. Ed. 386], it is said by the Supreme Court of the United States 'that damage to the promisee constitutes as good consideration as benefit to the promisor.'"

See, also, Hendricks v. Snediker, 30 Tex. 306.

In Rose v. Railroad Company, 31 Tex. 60, it is said:

"Indeed it may be stated as among the elementary principles and maxims of law 'that if a benefit accrues to him who makes the promise, or if any loss or disadvantage accrues to him to whom it is made, at the request or on motion of the promisor, although without benefit to the promisor, in either case the consideration is sufficient to sustain assumpsit.'"

The Missouri Court of Appeals, in the case of Scriba v. Neely, 130 Mo. App. 258, 109 S. W. 847, states the law on this subject in the following language:

"Consideration means not so much that one party is profited as that the other abandons some legal right in the present, or limits his legal freedom of action in the future as an inducement for the act or promise for the first. It does not matter whether the party accepting the consideration has any actual benefit thereby or not. It is enough that he accepts it, and that the party giving it does thereby undertake some burden or lose something which in contemplation of law may be of value."

In the case of Patrick v. Barker, 78 Neb. 823, 112 N. W. 358, the petition alleged in substance that plaintiff is the surviving member of a copartnership under the name of Patrick Bros.; that defendant and one Johnson, president and cashier, respectively, of a state banking corporation doing business in the city of Omaha, in order to convert said state bank into a national bank, solicited the partnership to purchase 200 shares of stock in the proposed national bank at par, and to induce the partnership to do so, agreed with and guaranteed the partnership that the bank would receive certain notes and mortgages held by the partners, valued at $20,000 or more, in full payment for said stock, and guaranteed to them that the bank would not

hold them liable under their contracts of indorsement or otherwise for any other or further amount in payment for said stock. To the petition a general demurrer was sustained. On appeal it was held that the contract set up was an independent obligation, by which the defendant undertook to hold plaintiff harmless for any action that thereafter might be taken by the bank requiring the payment of any other or further consideration for the stock so purchased than the notes exchanged therefor. It was also contended in that case that the alleged contract was without consideration. In answering this contention it was said by the court:

"The petition alleged, in substance, that plaintiff is the sole surviving member of a late partnership doing business in this state under the name and style of Patrick Bros.; that in 1888 the defendant and one Johnson were the president and cashier, respectively, of a state banking corporation doing business in the city of Omaha; that in July of that year, in order to convert said bank into a national banking association under the name of the National Bank of Commerce, the defendant and Johnson each solicited the partnership to purchase 200 shares of the capital stock of their proposed national bank, at and for the par value of $100 per share, and, in order to induce the partnership to make such purchase, orally agreed with and guaranteed to them that the bank would receive certain notes and mortgages held by the partners, at that time understood to be worth $20,000 or more, in full payment for the said stock, and agreed with and guaranteed to them that the bank would not hold them liable, upon their contracts of indorsement or otherwise, for any other or further amount in payment for said stock. * * * It is claimed, however, that the agreement is void for want of any consideration to support it. We do not so understand it. If Barker agreed with the plaintiff and his partner that, if they would take and pay for the stock, and thus aid him in converting his state bank into a national bank, he would protect them from any liability as indorsers, or otherwise, upon the paper which it was agreed they should turn over in full payment for the stock, and plaintiff and his partner did, as alleged, actually purchase the stock, and pay for the same as thus agreed upon, such purchase was a sufficient consideration to support the agreement, and it cannot be said to have been made without consideration."

In Hendrick v. Lindsay, 93 U. S. 143, 23 L. Ed. 855, it is said that any damage, suspension of a right, or possibility of a loss occasioned to plaintiff by the promise of another is a sufficient consideration for such promise, and will make it binding, although no actual benefit accrued to the party promising. Section 207, Elliott on Contracts, states the rule as follows:

"A valuable consideration is generally defined as 'some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other.' There is danger, however, of misunderstanding this definition. The term 'benefit' does not refer necessarily to a money gain arising out of the transaction, but has reference to any advantage or benefit, slight, but recognizable at law, derived by the promisor in return for his promise. Nor does the term 'detriment' refer to any pecuniary loss. Any act done by the promisee, at the request of the promisor, by which the former sustains any loss, trouble, or inconvenience, even of the most trifling description, if not utterly worthless in the eye of the law, constitutes a valuable consideration for a promise."

As alleged, it is evident that Reeves, at the time of his promises, was endeavoring to promote the formation of a corporation, in which enterprise it can but be presumed he was personally interested, and if he made the alleged promises to induce Anderson to subscribe for the stock of the proposed company, and to execute his note for money with which to pay for the same, and Anderson accepted the proposition, and in reliance thereon acted upon it, the contract became complete and binding.

[7] In this connection we will also note a contention of appellee Reeves in some of his counter propositions that the petition fails to allege that the promise of Reeves was in writing, and that, as presented, the cause of action arising thereon is barred by the two-year statute of limitation. But we think these contentions must be overruled. Ordinarily, even in cases where, under the statute of frauds, a contract can only be enforced when written, an allegation that such a contract was entered into, without stating whether the contract was in writing or in parol, will, as against a general demurrer, be held to be sufficient; it being presumed in such cases that the pleader intended to set forth an enforceable contract, placing upon the defendant the burden of pleading the statute of frauds, if he wanted that issue presented. See James v. Fulcrod, 5 Tex. 512, 515, 55 Am. Dec. 743, and like cases. Besides, it does not affirmatively appear on the face of the pleadings that the contract of Reeves to pay the note might not have been performed within the year of its making, or of its renewal, as alleged. Moreover, it certainly cannot be reasonably contended that to be enforceable it was necessary that Reeves' contract of indemnity—to hold appellant harmless by reason of the execution of the notes described—should have been in writing, or that, as presented, the cause of action arising thereunder is barred by limitation.

[8, 9] The contract to indemnify was merely collateral to that evidenced by the note to the bank executed by appellant, and so plainly not subject to the operation of the statute of frauds as not to require elaboration or the citation of authorities, and it is evident that Reeves' liability thereunder, if any, did not begin, and was not intended to begin, until after appellant had suffered loss or damage because of the execution of the note or notes to which the contract of indemnity related; and this, it is evident from the pleadings, has not yet occurred. Indeed, we are inclined to the view that, as alleged, the agreement of Reeves to pay the note executed by Anderson to the bank is to be construed merely as one method adopted by the parties for the fulfillment of the agreement to indemnify, and not as a distinct agree-

ment, to be enforced without reference to, and regardless of, the indemnifying phase of the contract as alleged.

[10] We should, perhaps, also note that one or more of the contentions on the part of appellee above noted were presented to the trial court in the form of special exceptions to the answer, and, as already stated, the court sustained the special exceptions, as well as the general demurrers, and the action of the court in ruling upon such special exceptions has not in some instances been brought forward by assignments of error urged before us. Appellees, therefore, contend that, inasmuch as a special exception includes as well a general demurrer, and inasmuch as the action of the court under the rules in sustaining the special exceptions has been waived by such failure to assign error thereto, that the judgment should be affirmed, regardless of the action of the court on the general demurrers that we have discussed. We are of the opinion, however, that, under the circumstances of this case, at least, the contention cannot be indulged. We will not set forth the numerous special exceptions that were urged to appellant's answer, but they have been examined, and all but one, we think—which was a special exception to the answer, because it did not state whether the contract alleged was in writing or in parol—are substantially, general demurrers, and as we construe them mere reasons why the general demurrer was well taken; the questions presented being proper for consideration in ruling upon the general demurrer even without the special exception.

[11] In this connection we also deem it proper to state that, where the trial court has sustained a general demurrer, this court ordinarily will presume that the litigant against whom the ruling is made will not feel called upon to amend his petition as called for by some special exception, which is intended to reach some informality only, even though the special exception is well taken. It has accordingly been our practice in such cases, where we have determined that the general demurrer was not well taken, to reverse the ruling, notwithstanding the fact that it may also have appeared that some special exception had been sustained that was well taken, in such cases contenting ourselves with merely pointing out the necessity of an amendment to meet the special exception.

We conclude that the court erred in sustaining the demurrers to the appellant's answer, as against the appellee Reeves, and as between those parties the judgment is reversed, and the cause remanded; the judgment in favor of the bank being undisturbed, as hereinbefore noted.

Affirmed in part; reversed and remanded in part.

On Application for Leave to File Motion for Rehearing.

Appellant, Anderson, presents an application for leave to file a motion for rehearing of the judgment in favor of the First National Bank of La Grange. Our opinion and judgment affirming the decree of the lower court in favor of said bank against Anderson was rendered upon January 13, 1917, and due entry thereof made upon the minutes of this court the same day. The 15 days thereafter within which motions for rehearing are permissible under article 1641, Vernon's Sayles' Texas Civil Statutes, expired on January 28th, and the application to file the motion for rehearing referred to was not filed in this court until February 3, 1917. The motion for rehearing that appellant desired to have filed accompanies the application, and therein he attacks that portion of our original opinion to the effect that we found no error in the trial court's ruling that the defense presented by appellant as against the bank was subject to general demurrer, in consequence of which ruling on our part the judgment in favor of the bank against Anderson was affirmed, as before stated.

The reasons presented in behalf of appellant for the failure to have filed his motion for rehearing within the proper time are, in substance, that since the rendition of our opinion counsel representing him had been moving their law offices, in consequence of which their files had been disarranged, and the ordinary facilities of the office impeded, and that the counsel presenting the application—

"had charged his mind that Saturday, the 3d day of February, was the last day on which said motion could be filed, and with that idea in view on Friday a. m., the 2d day of February, presented this motion to the clerk, when he was informed that the time for filing the same had expired, which was the first information he had calling his attention to such fact."

[12] The appellee the First National Bank of La Grange opposes the application to file the motion for rehearing, insisting that to so permit will, in all probability, because of the crowded condition of the docket of our Supreme Court, result in long-continued delay in the enforcement of their judgment, and we feel it to be our duty to sustain appellee's contention in this respect, because of a want of a sufficient showing for the failure to file the motion for rehearing within the proper time. The counsel who presents the application was present on the original hearing of this case, participated in the argument upon that occasion, and it is to be observed that no reason is given in the application for the fact therein stated that the counsel—

"had charged his mind that Saturday, the 3d day of February, was the last day on which said motion could be filed."

This court feels every disposition to enforce the rules provided for the dispatch of

business liberally, but we cannot hold, as against the right of a litigant, that, with all the facilities for information available to counsel participating in the disposition of a cause in this court, he may, in the exercise of due diligence, rely upon a mere idea or loosely formed recollection of the proper time within which, under the law, he is required to complain.

In the case of Sams v. Creager et al., 85 Tex. 497, 22 S. W. 399, it was distinctly held that the rule requiring persons to file within the proper time motions for rehearing must be enforced. In that case, as here, an excuse was attempted for a failure to file the motion for rehearing in time, but the Supreme Court held that the excuse was insufficient, stating:

"If it had been shown that the failure to file the motion within the time prescribed by law resulted from accident, or cause other than neglect of applicant, this court might consider the application, notwithstanding that the Court of Civil Appeals had not acted on the motion for a rehearing."

That case was one that was appealed from this court, and we now have before us the original record in which the excuse presented by the counsel in that case was made. It was to the effect that counsel was—

"a subscriber to the Ft. Worth Daily Gazette, and examined each issue to ascertain what disposition had been made of said cause by this court, and also requested a member of the bar at this place (Amarillo) to notice said paper for any information to said cause appearing in it."

It was further alleged that:

"Without fault on his part, he never discovered that any opinion had been handed down by this court until said opinion was published in full in the Gazette of the ——— day of February, 1893. That on the morning the Gazette containing said opinion reached this place, affiant left for Deaf Smith county on professional business and was absent four days. That on his return home a motion was presented by mail to the clerk of this court for rehearing in said cause, in behalf of appellant Sams. * * * Affiant says that he used due diligence in his efforts to learn the opinion of the court on said cause as soon as the same was handed down, and his said motion for rehearing was presented to the clerk of this court as soon as possible after learning that said cause had been disposed of."

The Supreme Court, as stated, held the excuse insufficient, and declined to assume jurisdiction over the cause. We accordingly conceive it to be our duty to overrule the application for leave to file the motion for rehearing, particularly in view of the fact that the appellee bank's judgment is based upon a plain promissory note executed by appellant, Anderson, and as against which we concluded on the original hearing, and still think, appellant presents no sufficient defense.